UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| MEDIDEA, L.L.C., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 17-11172-LTS |
| DEPUY ORTHOPAEDICS, INC. et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER ON DISCOVERY MOTIONS

August 23, 2018

SOROKIN, J.

This matter was recently reassigned to the undersigned after its transfer to this District from the Northern District of Illinois, and following the recusal of two other Judges of this Court. At the time of reassignment, five motions arising from discovery disputes were ripe and unresolved. Those motions are the subject of this Order.

I. <u>Plaintiff's Motion to Compel DePuy to Produce Documents Responsive to Plaintiff's First Request for Production (Doc. No. 78)</u>

The first motion arose from MedIdea's dissatisfaction with the manner in which DePuy responded to MedIdea's first set of discovery requests, and its concern that only ten weeks would remain in the discovery period by the time DePuy completed its production of responsive documents. See generally Doc. Nos. 78, 79. The motion was filed and briefed in November 2017. At that time, DePuy anticipated substantially completing its production of documents in January 2018, and fact discovery was set to conclude in March 2018. Doc. No. 79 at 2-3. MedIdea sought an order compelling DePuy to produce all responsive documents by November 30, 2017. Doc. No. 78 at 2.

After MedIdea filed its motion, the discovery deadline was extended twice, with fact discovery ultimately concluding on August 3, 2018.  Doc. Nos. 94-95, 108-09.  It appears DePuy now has completed its document production.  See Doc. No. 113 at 7 (describing the document production and suggesting the only items outstanding were royalty reports, which the Court addresses below).  No party has sought a further extension of the fact discovery deadline.

In these circumstances, MedIdea's first motion to compel (Doc. No. 78) is DENIED without prejudice as MOOT.

II.	Defendants' Motion to Compel Infringement Contentions (Doc. No. 84)

The second motion expressed DePuy's dissatisfaction with MedIdea's preliminary infringement contentions which, in part, cited annotated figures from a patent held by DePuy rather than photographs or figures depicting the accused product itself.  See generally Doc. Nos. 84-85.  DePuy sought an order compelling MedIdea "to immediately provide infringement contentions that comply with the local rules" by articulating "how MedIdea is reading the claims onto the actual accused products."  Doc. No. 85 at 16.  The motion was filed and briefed in February 2018.

After DePuy filed its motion, MedIdea amended its preliminary infringement contentions in a manner which appears to eliminate the deficiency DePuy identified.  Doc. Nos. 102-06.  MedIdea filed its revised infringement contentions in April 2018, after the parties had filed their claim construction briefs but well in advance of any Markman hearing.  See Doc. Nos. 120, 129, 141 (setting hearing for August 2018, then rescheduling it to October 2018, then cancelling it upon reassignment).  DePuy has not challenged the amended contentions.

Accordingly, DePuy's motion to compel (Doc. No. 84) is DENIED without prejudice as MOOT.

III. <u>Plaintiff's Motion to Compel DePuy to Produce Documents, Produce Samples of the Accused Product, Designate a Witness for Specified 30(b)(6) Topics, and for Sanctions</u>

In the third motion, MedIdea complains that DePuy has refused to: 1) produce royalty reports for its knee products; 2) provide MedIdea "the various different sizes of the Accused Product" for free; and 3) designate a 30(b)(6) witness to address topics related to DePuy's document production. Doc. No. 112 at 2. MedIdea asks for an order compelling DePuy to do each of those things, and further seeks sanctions and an award of attorney's fees. <u>Id.</u>; Doc. No. 113 at 18. DePuy opposes the motion. Doc. No. 124. The Court will address each of MedIdea's requests in turn.

1. *Royalty Reports*

MedIdea argues DePuy's refusal to produce royalty reports for the accused product is "indefensible," and seeks an order requiring production of royalty reports for all of DePuy's knee systems. Doc. No. 113 at 8-13. According to MedIdea, the reports are needed to determine: "what sales are included in the royalty base," the "amount and timing of royalty-bearing sales," the "individual and cumulative amounts paid by DePuy for intellectual property related to [its] knee products," DePuy's specification of "net sales," the royalty rates applied to different volumes of sales, which products are within each consultant's royalty agreement, the amount of royalty payments approved and to whom they were paid, and whether deduction rates have changed since DePuy's original licensing agreements. <u>Id.</u> at 10-11. In support, MedIdea's damages expert broadly declares that the "reports contain information relevant to the determination of damages in this case that is not otherwise available." Doc. No. 113-20 at 1.

DePuy opposes MedIdea's request, noting the reports are only arguably within the scope of materials responsive to certain overbroad discovery requests, and urging that it has provided the information necessary for MedIdea to calculate its damages. In particular, DePuy points to

3

its production of dozens of licensing agreements between DePuy and various consulting doctors (including at least thirty agreements pertaining specifically to the accused product) which specify royalty rates, the royalty base, the recipient of royalty payments, and deductions; its production of sales data for the accused product, permitting calculation of royalties using the terms reflected in the licensing agreements; and its designation of 30(b)(6) witnesses to testify about the terms and administration of the licensing agreements for DePuy's knee products. Doc. No. 119 at 9-10. DePuy argues that, on these facts, MedIdea has not established a need for the royalty reports (of which there are more than 700 related to the accused product alone), let alone a need which outweighs the burden and expense of requiring DePuy to produce them. Id. at 6 (citing Fed. R. Civ. P. 26(b)(1)).

On the present record, the Court DENIES MedIdea's request for royalty reports. MedIdea's own expert acknowledges that the documents already produced by DePuy contain royalty rates, deduction rates, and information about the projects for which a given doctor will receive royalties. Doc. No. 114 at 27. Although he identifies questions he has related to this information, he does not state he is unable to calculate damages on the basis of the information he has, and DePuy reasonably points out that the expert's questions can be resolved via testimony by its 30(b)(6) witnesses. In these circumstances, MedIdea has not provided sufficiently specific reasons to demonstrate its need for the royalty reports or to justify requiring DePuy to undertake the process of collecting, and assessing confidentiality issues related to, hundreds of reports spanning many years.[1]

---

[1] Insofar as reports for devices besides the accused product are concerned, MedIdea's general assertion that such reports will "provide relevant contextual information" helpful "in analyzing DePuy's licensing practices," Doc. No. 113-20 at 3, does not establish why reports about other products are relevant to—let alone necessary for—MedIdea's calculation of damages here.

4

2. *Product Inspection and Samples*

MedIdea asserts that DePuy has "thwart[ed] the discovery process" by refusing to produce "all sizes" of the accused product. Doc. No. 113 at 14. Although DePuy provided a size 5 sample of its product, which comes in sizes 1 through 10, MedIdea asked for all other sizes "at [DePuy's] cost" after DePuy declined to stipulate that all sizes were identical for infringement purposes. See id. at 13-14. DePuy responded by offering to permit MedIdea to either inspect all sizes or purchase other sizes at the average sale price. Id. at 14.

MedIdea has provided no authority supporting its view that DePuy should be required to provide—for free[2]—ten separate medical devices worth thousands of dollars each, where the ten devices are simply different sizes in the same line of products which DePuy already has stated are all proportionally the same. MedIdea has not established that it is entitled to obtain the samples either for free or at what it asserts is "cost," rather than at the average sales price. Moreover, the Court finds absolutely no support for MedIdea's claim that DePuy has been unwilling to permit inspection of the various sizes. The record, including MedIdea's own exhibits, is to the contrary. E.g., Doc. No. 113-7 at 2 (reflecting DePuy's explicit offer to "either sell [MedIdea] the samples *or make them available for inspection*, but not both" (emphasis added)).

---

[2] In conferring and negotiating with DePuy regarding its request for other sizes of the accused product, MedIdea "offered to pay the 'at cost' price" for the other sizes. E.g., Doc. No. 113-6 at 3. In other words, MedIdea at that time objected to paying the sale price, but was willing to pay whatever it cost DePuy to produce the item(s). Now, however, in its brief, MedIdea appears to seek free samples of the other sizes. See Doc. No. 113 at 13 (requesting in heading "B" an order requiring production of other sizes "at No Cost"); id. at 15 (seeking an order compelling inspection, and then compelling production of "whichever sizes Plaintiff requests at no cost to Plaintiff"); but see id. at 13 (characterizing request in subheading "2" as an order compelling production of all sizes "at Cost").

5

In light of these facts, DePuy shall arrange for MedIdea to inspect all sizes of the accused product at a mutually convenient time on or before September 28, 2018. If, after inspecting the products, MedIdea wishes to buy one or more of the samples at the prices previously proposed by DePuy, Doc. No. 113-7 at 2, it may do so provided it produces to DePuy a letter tendering payment within seven days after the inspection.

3. *Corporate Designee*

Third, MedIdea argues DePuy should be compelled to designate a 30(b)(6) witness to testify about: 1) who participated in DePuy's document collection and production, and 2) how and from whom such documents were collected. Doc. No. 113 at 16. According to MedIdea, DePuy has not shared the search terms it used or the list of custodians it included in its collection of documents responsive to MedIdea's discovery requests. Id. at 17.

DePuy claims that it cannot designate a witness for the first topic, as the people who oversaw its document collection (and, thus, the only individuals knowledgeable on that topic) were its outside counsel. Doc. No. 119 at 16. As such, DePuy suggests no witness exists who could provide non-privileged information on this subject. Id. As to the second topic, DePuy says it has provided metadata—including the identity of the custodian—for every document it produced. Id. DePuy also notes that MedIdea is free to explore (and, indeed, already has explored) these topics with DePuy representatives during their depositions. Id.

The designation of search terms and custodians is a topic about which the parties were required to confer and submit joint or separate proposals as part of their discovery plan pursuant to Rule 26(f)(3)(C). Here, the time for that conferral and the resulting proposal—and for bringing disagreements to the Court's attention—has long passed. See Doc. No. 65 (reflecting the parties' joint proposal to discuss procedures for electronic discovery by August 2017); Doc.

No. 76 (reflecting the Court's endorsement in October 2017 of the parties' proposed protocol for electronic discovery, which was silent as to selection and disclosure of search terms and custodians). MedIdea waited until June 2018—eight months after the parties conferred and proposed terms governing the production of electronic information—before raising with the Court DePuy's failure to disclose its search terms. It provided no explanation for waiting so long to raise this issue, nor did it articulate any specific reasons to justify its claim that it needs this information. Furthermore, DePuy raises legitimate questions of attorney-client privilege which constitute a substantial obstacle to a 30(b)(6) deposition on at least the first of the two areas at issue, and its production of metadata appears to provide at least some of the information within the second area.

In these circumstances, the Court will not compel DePuy to designate 30(b)(6) witnesses to be deposed on the topics that are the subject of MedIdea's motion.

4. *Sanctions*

Finally, after peppering its submissions with inflammatory characterizations of DePuy's conduct and self-serving descriptions of its own attempts "to compromise at every turn," MedIdea claims it "has no choice but to" seek sanctions and an award of attorney's fees and costs based on DePuy's "especially egregious" efforts "to obstruct and delay the discovery process." Doc. No. 113 at 2, 18. This request merits no comment beyond noting that the Court does <u>not</u> endorse MedIdea's characterizations. The motion for sanctions is DENIED.

\* \* \*

In sum, MedIdea's second motion to compel and for sanctions (Doc. No. 112) is ALLOWED only insofar as it seeks an opportunity to inspect all available sizes of the accused device. DePuy shall make all sizes of the accused product available for MedIdea's inspection on

7

or before September 28, 2018. If, after inspecting the products, MedIdea wishes to buy one or more of the samples at the average sales prices previously identified by DePuy, it may do so provided it tenders payment to DePuy within seven days after the inspection. In all other respects, this motion is DENIED without prejudice.

IV. <u>Non-Party Richard D. Komistek's and Non-Party Douglas A. Dennis's Motions to Quash Subpoenas to Testify at Depositions in a Civil Action (Doc. Nos. 123 and 125)</u>

The last two motions relate to subpoenas MedIdea served in June 2018 on two doctors who are neither parties to this action nor inventors associated with the patents-in-suit. Doc. Nos. 123-1, 125-1. The doctors are inventors of "the Dennis Reference," which DePuy identified in its invalidity contentions as one in a list of eight prior art references which it believes invalidate the patents-in-suit. Doc. No. 72 at 4. The subpoenas seek the doctors' deposition testimony, as well as their production of four broad categories of documents. Doc. Nos. 123-1, 125-1.

DePuy, on behalf of the doctors, moves to quash the subpoenas, arguing they seek improper and uncompensated expert opinions, irrelevant testimony, and information that can be acquired through the parties. Doc. Nos. 123 at 5-7, 125 at 5-7. DePuy also urges that they impose an undue burden on individuals who are surgeons, researchers, and lecturers with schedules that do not readily permit time for reviewing and producing decades-old documents or attending depositions within the limited time period noticed by MedIdea. <u>Id.</u> In addition, DePuy notes that MedIdea served these subpoenas only after a decision by the United States Patent Trial and Appeal Board ("PTAB") instituting inter partes review ("IPR") of one of the patents-in-suit after finding a reasonable likelihood that the Dennis Reference anticipated certain claims in the relevant patent. Doc. No. 123-2. Because MedIdea did not identify the doctors in its Rule 26 disclosures as people with knowledge pertinent to its claims or defenses, nor did it issue similar subpoenas to inventors of any other prior art reference asserted by DePuy, DePuy characterizes

8

the subpoenas as attempts by MedIdea to circumvent the limited discovery rules governing IPR proceedings.[3]

MedIdea responds that the information it seeks from the doctors "is relevant to [DePuy's] invalidity defense" in this case, that it seeks factual (not expert) testimony about the Dennis Reference which the two doctors are uniquely positioned to provide, and that DePuy has not adequately supported its claim that the subpoenas unfairly burden the doctors.[4]  Doc. Nos. 127 at 3-7, 128 at 3-7.  MedIdea does not address the IPR decision or the PTAB's discovery process.

The Court accepts DePuy's averment, which MedIdea has not disputed, that neither party included the names of the relevant doctors in initial disclosures.  Doc. No. 123 at 2.  Those disclosures—which must identify all individuals "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(i)—occurred in July 2017, Doc. No. 65 at 3.  As far as this Court is aware, MedIdea neither sought an extension of the deadline governing initial disclosures nor supplemented its disclosures to add the relevant doctors.  For various reasons, the parties have had at least a year to conduct fact discovery in this case—longer than either party proposed upon transfer to this District.  Doc. No. 65 at 8.  The discovery deadline was extended twice at MedIdea's behest; in neither extension request did MedIdea cite a need to depose these doctors as justifying additional time for fact discovery.  Doc. Nos. 89, 107.

---

[3] Those rules apparently allow for discovery from inventors of prior art only with prior express permission from the PTAB—something MedIdea has not obtained.  Doc. No. 123 at 3.
[4] MedIdea begins its opposition brief by challenging the technical sufficiency of DePuy's efforts to confer about this dispute.  The Court declines MedIdea's invitation to deny the motions to quash "outright" on the basis of its characterizations of the parties' correspondence regarding the subpoenas.  Doc. No. 127 at 2.

Nevertheless, more than a year after making its initial disclosures, and nearly nine months after receiving DePuy's invalidity contentions identifying the Dennis Reference and other relevant prior art, MedIdea *for the first time* expressed a desire to depose and collect documents from the two doctors at issue. Its requests came on the heels of the PTAB's decision instituting IPR (at DePuy's request, and over MedIdea's objection) of the validity of one of the patents-in-suit, and only weeks before the twice-extended deadline for completing fact discovery. The subpoenas are directed only to the inventors of the prior art reference discussed by the PTAB in its decision—a decades-old, published reference available for and amenable to construction by persons with skill in the art—and not at the inventors of the other seven prior art references DePuy also has identified as supporting its invalidity claims here.

All of this suggests that MedIdea's attempts to obtain testimony and documents from the two named doctors are at odds with its own disclosures, are contrary to the letter and spirit of the rules governing discovery in this Court, and constitute an improper attempt to gather information MedIdea wishes to use in the pending IPR proceedings (where it is not generally entitled to discover such information). As such, the motions to quash (Doc. Nos. 123 and 125) are ALLOWED.

V.  Conclusion

With the parties' discovery disputes resolved as set forth above, the claim construction phase of this case can proceed.[5]

Accordingly, all counsel shall appear for a status conference on September 12, 2018, at 11:00 AM in Courtroom 13 to address any outstanding discovery, scheduling, or other case-

---

[5] To the extent either party sought a hearing on any of the motions resolved in this Order, those requests are DENIED. The motions are comprehensively briefed and supported with relevant exhibits, and the Court sees no need for further written or oral argument.

management issues they wish to bring to the Court's attention in advance of the Markman hearing.

The Markman hearing will occur on October 25, 2018, at 9:30 AM in Courtroom 13.

SO ORDERED.

  /s/ Leo T. Sorokin
United States District Judge